P. "Mike" Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FEB 0 3 2012

FILED_____
DOCKETED _____
　　　　　　DATE　　INITIAL

February 1, 2012

Office of the Clerk
USCA for the Ninth Circuit
PO Box 193939
San Francisco, CA 94119-3939

Re:   Peter Michael Palmer v. Kenton D. Jones, et al.
      No. 11-18040

Dear Judges Canby and Silverman:

　　　Plaintiff has been ordered to show cause as to why summary affirmance of the district court's judgment, granting defendants' motion to dismiss (based on judicial immunity), is not appropriate. In other words, I am to show cause why this case should not be summarily dismissed by the appeals court. This I will do.

　　　The court did not specify the form of response in its order. Therefore, in the spirit of the Ninth's gracious FRAP 28-1(c) for unrepresented parties, pro se plaintiff has taken the liberty of responding informally in the form of a letter to the court. This is consistent with a recent precedent from this court (from July 2011) where the merits panel ordered the U.S. Government and Log Cabin Republicans to similarly show cause why their case should not be dismissed. (Case No. 10-56634, Order filed July 11.) That panel ordered the responses take the form of letters to the court. Since both were represented parties, it seems there can be no harm for this unrepresented party to respond similarly.

　　　If this is not satisfactory, I ask the court for guidance as to the format desired and a fourteen (14) day extension of time to comply.

"Hate evil, love good; maintain justice in the courts." Amos 5:15

**Background**

Some background is needed to set the stage for arguments to follow.

This case has been reported in the national press as "Michael's Law," in honor of Michael Roth of Quartzsite, Arizona. (A three minute video tells the story. www.youtube.com/watch?v=tcznFkhpOIY.) Mr. Roth made news when his Second Amendment right was unlawfully revoked by a local judge for calling a Quartzsite town councilman a "turd."(Doc. 5 at 14:12) After the story came out in the news, Mr. Roth's judge vacated her unlawful ex parte order sua sponte, admitting "the Injunction does not conform to Arizona statute." (See Doc. 22, Ex. 2.)

A few months after Mr. Roth's experience, I too was served with an ex parte civil Injunction Against Harassment . . . for blogging.[1] Absent required legal notice by statute (A.R.S. § 12-1809(E)), defendant Judge Jones issued the injunction on behalf of a woman who lives 120 miles away from me. (Doc. 5, ¶¶ 19, 20 and Exhibit 1.) The civil injunction was ostensibly issued in accordance with Arizona Revised Statute § 12-1809.

But in addition to the usual "no contact" provisions, the Injunction also prohibits me from possessing firearms. (*Id.* ¶ 36) This is the foundational constitutional issue that forced this federal action. Arizona law does not provide for prohibition of firearms in civil injunctions. The words "firearm" or "weapon" are not in the statute. The Justice defendants promulgate an internal "rule of procedure" as law on Arizonans via their (the Justices') judicial officers.

As a result, absent law, my name has been put on the FBI's National Crime Information Center's database as "Brady Positive." (Colloquially known as a "Brady Disqualification.") I am currently listed as a criminal domestic violence offender. (Doc. 31 at 2:16-21.) All by way of an ex parte civil action. In addition to the constitutional deprivations, this is a violation of federal law at two points, per 18 U.S.C. § 922(g)(8). First, Brady cannot apply to an ex parte hearing. Second, Brady only applies in criminal Domestic Violence situations.

---

[1] "Blog," a Web site containing the writer's or group of writers' own experiences, observations, opinions, etc., and often having images and links to other Web sites. (per dictionary.com)

2

I had battled this same unlawful Second Amendment deprivation in an Injunction years before—and won—from this same Arizona court (but not the same judge.) (Doc. 5, ¶¶ 39, 40 and Ex. 6.)

Some time after that, I tripped across the Arizona Supreme Court's Arizona Rules of Protective Order Procedure ("ARPOP") on the Internet. On their website, defendant Justices state that their internal rules (which ostensibly includes the ARPOP) are "rules of procedure for the courts of this state." (Attachment A.) The ARPOP is a handbook for judges, a CliffsNotes of sorts, on the desperate laws regarding "restraining orders" in Arizona. It is not law. (*Id.* ¶¶ 47, 48)

In general, the rules in the ARPOP echo our state laws and refer back to the Arizona Revised Statutes for support. But not Rule 6(E)(4)(e)(2) which says, "The judicial officer shall ask the plaintiff about the defendant's use of or access to weapons or firearms. The judicial officer may prohibit the defendant from possessing, purchasing or receiving firearms and ammunition for the duration of the Injunction Against Harassment." There is no statute cited for this Rule because the Arizona Legislature did not provide for firearm restrictions in Injunction law. (A.R.S. § 12-1809)

Trying to be a good citizen and trying to save my fellow man from the same harm I suffered, in December 2009 I dutifully filed an emergency petition in the Arizona Supreme Court's public forum. I petitioned the defendant Justices to rescind Rule 6(E)(4)(e)(2) of the ARPOP on an emergency basis because it violated the fundamental right to "bear arms" guaranteed in the U.S. and Arizona Constitutions, and because there is no law to substantiate the rule. (*Id.* ¶¶ 51, 52)

While this was pending, the Arizona Legislature and Executive fully recognized that "the right of the people to keep and bear Arms shall not be infringed" when they allowed us to carry concealed without a permit. (A.R.S. § 13-3102)

On August 31, 2010, the Arizona Supreme Court "rejected" my petition without comment in the forum. However, on September 7, 2010 I received an email from the court's Chief Staff Attorney: "The justices asked me to let you know that, although your proposal in this matter was rejected, the Court believed some of your argument deserved further consideration. Therefore, the matter has been referred to the State Bar Family Law Practice and Procedure Committee to consider and recommend to the Court standards to guide judges in their decision whether to

3

prohibit possession of firearms during the pendency of an injunction against harassment." (*Id.* 5, ¶¶ 53, 54) But as of this writing, the defendant Justices have not repealed their baseless Rule.

I now find myself again the victim of a deprivation of a fundamental constitutional right as a result of the defendant Justices' rule, as have other Arizona residents, like the aforementioned Michael Roth.

I have exhausted my administrative remedies. To fight this again in state court might cure a symptom but it will not cure the disease. The issues here continue as a live controversy. This matter requires prospective relief. (Prospective relief in the form of an injunction against Rule 6(E)(4)(e)(2) will have the salutary effect of instant relief here.) These deprivations will never end unless a federal court intervenes. Which brings us to this appeal and this show cause letter.

Unfortunately, in the district court's dismissal order, he did not specifically articulate which of opposing counsel's immunity arguments he found availing. Instead, ruling virtually in dicta, by way of a footnote (citing Defendants' Motion to Dismiss, Doc. 18 at 4-6), the court implied that <u>all</u> of opposing counsel's arguments are correct. Since the district court did not refute my case law to the contrary nor acknowledge the flaws and mischaracterizations that I called out in opposing counsel's cites, it is impossible to know which arguments to argue against here. Thus, I am forced to rehash them all. In the interest of justice I ask for leave if I have exceeded a page limit in doing so. (Word count = 4730.)

**Arguments**

I. Summary dismissal is not an option in a case of first impression

As best this pro se litigant can tell, this is a case of first impression due to the office of the defendants and what they've done. (And the Arizona State attorney general and what he's doing.) As such, there are several original issues of law which need to be settled which can set precedent. Ironically, a new precedent setting issue raised by this court itself is whether judicial immunity can be grounds for summary dismissal in this unique case of a civil rights action against the Justices of a state court charged with unconstitutionally codifying and enforcing their own unconstitutional "law."

Ironically then, my first argument as to why this case should not be

summarily dismissed is simply because this is a case of first impression. Implied in a case of first impression is that previous negative precedents don't necessarily apply. So even if judicial immunity might ordinarily apply, it might not here. Also, since precedent setting cases are uniquely the purview of appellate courts, summary dismissal is not an option. In a "Rule of Necessity" sort of way, even if defendants could have immunity, it is necessary for the court of appeals to set aside immunity so it can hear and decide original issues of law.

II. Summary dismissal not ripe for judgment.

Similarly, part and parcel of deciding judicial immunity is first deciding all that follows below. Before the court can determine if judicial immunity applies, it must first fully hear my case in order to determine if the defendants acted outside their judicial authority. Therefore, there is the issue of ripeness here and summary dismissal would be premature.

III. State defendants are not summarily immune from suit because . . .

A.    . . . there is no liability (monetary damages).

In opposing counsel's motion to dismiss, she begins with an off-point straw man stating "It is a well-settled legal principle that judges have absolute immunity **from liability** for their judicial or adjudicatory acts" citing the usual cases of *Forrester, Mireles, Stump and Pierson*. (See Doc. 18, 4:10-15.) But as counsel acknowledges in her FN2 (*Id.* at 4) I am not suing for monetary damages. So her straw man is wholly inapposite to this action which seeks only declaratory and injunctive relief. Since I am not seeking monetary damages, there is no liability or "personal consequence" here. Thus, English common-law, the landmark *Bradley v. Fisher* and subsequent progeny do not apply. (*Id.* 4:16-20)

Nevertheless, opposing counsel then quotes a draconian broad brush statement from *Mireles v Waco*, (502 U.S. 9, 112 S.Ct 236, 116 L.Ed.2d 9 (1991)), that "judicial immunity is an immunity from suit, not just from ultimate assessment of damages." But again, *Mireles* was about money. (At *10, "Waco demanded general and punitive damages.") So *Mireles* isn't applicable to my case and immunity from suit does not attach.

B.    . . . there are no judicial acts.

5

Even if *Mireles* were applicable, opposing counsel's quote it is not as fatal as it sounds. This is the famous case where Judge Mireles arguably assaulted a public defender. The Supreme Court didn't say judicial immunity was always applicable. "Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. *Forrester v. White*; *Stump v. Sparkman*. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Bradley v. Fisher*." (*11, detail citations omitted.)

Now, in Defendants' Reply to Plaintiff's Response, opposing counsel will tell you that I "argue *ad nauseam* that defendants have acted outside their judicial immunity." (Doc. 26 at 2:23.) In poker, that's called a "Tell." Opposing counsel is telling you that even she sees the problem here. Let's put our cards on the table.

i.     Let's consider the defendant Justices first. Even though liability is not in play, the Justices meet both of the *Mireles* circumstances/exceptions above anyway.

Per the Background discussion, the crux of this federal action is that the defendant Justices of the Arizona Supreme Court have acted to make (and enforce) a rule of procedure which prohibits firearms in civil injunctions even though controlling state law does not mention firearms. When enforced by judicial officers of the courts of this state, this rule of procedure deprives Arizona residents of a constitutional right, which makes the action unconstitutional on its face. Moreover, since the defendant Justices are prohibited by Article III of the Arizona constitution (*Distribution of Powers*) from making law, their action is doubly unconstitutional. Therefore, the Justices have engaged in nonjudicial actions by definition.

Opposing counsel tries to muddy separation of powers twice. First, in her Motion to Dismiss (Doc. 18 at 6:12-18), she claims the judiciary is immune because its rule-making function is "legislative" which imparts "legislative immunity."

Her language is from *Supreme Court of Virginia v. Consumers Union of United States,* 446 U.S. 719 (1980), upon which she relies. But *Virginia* was an action against Justices of a state Supreme Court who were properly exercising their statutory authority over members of the State Bar by making (legislating) rules of discipline for attorneys. Unlike the Virginia Justices with their rules of ethics for officers of the court, the Justices here do not have statutory authority to legislate rules of procedure to discipline residents of Arizona at they see fit. (To prohibit

6

firearms in a civil injunction.) They cannot be immune when they do.

Consistent with this reasoning, the First Circuit distinguished *Virginia* two years later in *In re The Justices of the Supreme Court of Puerto Rico, In re Colegio De Abogados de Puerto Rico*, 695 F.2d 17 (1st Cir, 1982). There, "**The Justices' argument that they are simply immune from suit for injunctive or declaratory relief is wrong**; . . . injunctions can be issued against judges in an appropriate case." (*25) Mine is such an appropriate case.[2] Note that Chief Justice Roberts did not claim judicial immunity when sued in "The Inaugural Case." (*Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir., 2010))

Opposing counsel muddies a second time in her Reply (Doc. 26 at 3:21-24) claiming the Justices have immunity because they are acting under the Arizona constitution's rule-making authority. Again, that fails because the Justices do not have legislative rule-making authority over Arizona residents.

I do not dispute that defendant Justices have "power to make rules relative to all procedural matters in any court," per Ariz. Const. Art. VI, § 5(5). The issue here is not whether the Justices can make internal rules for their courts but whether they have the power to make rules like Rule 6(E)(4)(e)(2) that have substantive legal effect on all Arizonans. Article III of the Arizona Constitution says they do not. That power is an enumerated power for the Legislature only.[3] It would be like the Justices making a rule of procedure calling for 13 pt. font in court filings (which they're allowed to do) but forcing that rule on any Arizonan outside of court. The Justices do not have that power over Arizonans and are not immune here.

ii.    Similarly, defendant Jones is not immune because his actions were nonjudicial.

First, defendant Jones swore an oath, per Ariz. Const. art. VI, § 26, that he would "support the Constitution of the United States and the Constitution of the State of Arizona . . . " He did not swear to support "rules of procedure for the

---

[2] *Puerto Rico* was pre-1996 FCIA, but FCIA is inapposite, as I show below.

[3] The defendant justices have acknowledged "the state constitution's separation-of-powers clause" in *Woods v. Block*, 942 P.2d 428 (Ariz. 1997) when the Legislature tried to give our Constitutional Defense Council powers of the Executive. If the Legislature cannot give itself Executive powers, neither can the Judicial give itself Legislative.

courts," especially those Rules which violate both constitutions. By depriving me of my constitutional gun rights absent law and by putting my name ex parte in the NCIC data base in violation of 18 U.S.C. § 922(g)(8) (a due process violation), he acted outside the Constitutions. Therefore, he engaged in nonjudicial acts.

And per Background, because defendant Jones did not comply with Arizona statute when he issued an ex parte Injunction against me (did not give legal notice required by statute (A.R.S. § 12-1809(E)), his entire action was absent statutory authority. He deprived me of due process. By acting outside the law, he forfeits whatever judicial immunity he might claim as a judicial officer.

In an attempt to deflect my due process argument, opposing counsel cited *Swarthout v. Cooke*, 131 S.Ct. 859 (2011) in her Reply. (Doc 26 3:13-18.) She liberally rewrote *Swarthout* to say "it is long recognized that a mistake in the application of law is not a violation of due process." That's not what the SCOTUS said. The actual quote is "we have long recognized that a **mere error** of state law is not a denial of due process." This is not a "mere error" but a major error of the first magnitude—a constitutional violation!

Quoting at *861, "As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived [yes, my constitutional rights] and if so we ask whether the procedures followed by the State were constitutionally sufficient." The chair of the Arizona Committee on the Impact of Domestic Violence and the Courts admits that Arizona restraining order law does not have "the same procedural due process requirements" as federal law.[4] (Comment of Arizona Superior Court Judge Ronan *In the Matter of Petition to Repeal Rule 6(E)(4)(e)(2)*, No. R-09-0045, Arizona Supreme Court's public forum.) Therefore, it is agents of the State who have caused the constitutional violations and the State procedures are constitutionally deficient! Therefore, per *Swarthout,* the defendants are not immune and this case should not be summarily dismissed.

IV.  Defendants do not meet the four-part test for absolute immunity.

Similarly, in *Brewer v. Blackwell* 692 F.2d 387 (5th Cir. 1982), "the court

---

[4] Worse, A.R.S. § 12-1809 purposely shuns the due process safeguards in federal injunction law. Another original issue of law to settle. See Doc. 5 ¶ 61.

8

developed a four-part test for determining whether judges should be protected by absolute immunity in particular cases. Under the test a court is to inquire whether: 1. The act complained of is a normal judicial function; 2. The events occurred in the judge's court or chambers; 3. The controversy centered around a case then pending before the judge; and 4. The confrontation arose directly and immediately out of a visit to the judge in his judicial capacity."

A.   As to the defendant Justices, they fail at 1: Making a rule that has no support in state statute but that has substantive legal effect on residents of Arizona is not a normal judicial function; and 3: There is no state case pending before the Justices.

B.   As to defendant Jones, he fails at 1: Enforcing a procedural rule under color and threat of law (violation of a court order) that has no support in state statute and listing me as a criminal via an ex parte civil action is not a normal judicial function; and 3: Since he did not properly serve notice on me and since this was an ex parte action, I have no case pending before the judge. (Even more technically, the injunction has been kicked down to the Prescott Justice Court and is out of defendants Jones' bailiwick. See Doc. 22, FN 9)

V.  FCIA of 1996 does not grant automatic immunity.

Opposing counsel quotes new language in the 1996 Federal Courts Improvement Act ("FCIA") to claim defendants have absolute immunity. (Doc. 18 at 5:20 ff.) But that is not what federal judge Zainey found in 2003 (after FCIA) after considering the Act in the very similar case of *Leclerc, et al. v. Webb, et al.* (270 F.Supp.2d 779).[5]

In *Leclerc*, the defendant Justices of the Louisiana Supreme Court were sued in their official capacities for a rule-making function. Plaintiffs sought declaratory and injunctive relief. Judge Zainey reviewed the history of judicial immunity, starting with opposing counsel's own *Supreme Court of Virginia v. Consumers Union*, taking us through counsel's *Forrester v. White*, ending with counsel's FCIA of 1996. After considering facts strikingly parallel to this case, judge Zainey said,

---

[5] Per Judge Zainey (at FN 17), "Interestingly, Defendants' own invocation of legislative immunity [which defendants in this instant case also (wrongly) try to invoke at *Id.* 6:14] belies any assertion that they believe that the FCIA erased the recognized distinctions between the various capacities in which judges act." So even defendants realize FCIA is moot here.

9

"In sum, for the facial challenge Plaintiffs bring today, Defendants are the proper party defendants because **they are charged with enforcing the allegedly unconstitutional rule**. Thus, for a suit mounting a facial challenge Defendants are by clear implication being sued in their enforcement capacities." He continues, "Because Plaintiffs are mounting a facial challenge to Rule XVII and are not suing Defendants for any individual culpability in conjunction with Rule XVII, the **'judicial function' aspects of judicial immunity are not at issue here.** Thus, the Court concluded that Defendants are **not entitled to judicial immunity for Plaintiffs' claims.**" (Emphasis mine.)

Similarly in this instant case, defendants are charged with codifying and enforcing an unconstitutional rule. For the same reasons in *Leclerc*, FCIA is not in play. Defendants are not entitled to judicial immunity. Therefore, summary dismissal for same is inappropriate.

VI.  Per FCIA there can be no immunity because a declaratory decree was violated.

This is a § 1983 action. According to FCIA, absolute immunity is not absolute even if a judicial officer is acting in his judicial capacity. FCIA says a judicial officer can be sued and injunctive relief can be granted when a declaratory decree was violated.

Now, you cannot get more declarative than the Constitutions of the United States (the Supreme Law of the Land (Article VI, Clause 2)) and the Arizona Constitution both which guarantee "the right to . . . bear arms," (See Ariz. Const. art. II, § 26) which the Arizona Legislature recently confirmed is a fundamental right of the people. Also, this ex parte injunction violates the decrees in the U.S. Constitution's Fifth and Fourteenth amendment along with the Arizona Constitution's Article III; Article II, § 8; and Article II, § 4. (See Counts, Doc. 5 at 18-25.) Because a declaratory decree of the highest order was violated, there can be no immunity.

VII.  Per FCIA there can be no immunity because declaratory relief was unavailable.

Likewise, FCIA says that absolute immunity is not absolute when declaratory relief was unavailable. Opposing counsel insists that FCIA puts the onus on me to exhaust my "administrative remedies" (my words) by trying this matter in state court. But that argument fails. Opposing counsel should have read her own

*Virginia.* "If prosecutors and law enforcement personnel cannot be proceeded against for declaratory relief, putative plaintiffs would have to await the institution of state-court proceedings against them in order to assert their federal constitutional claims. **This is not the way the law has developed . . .** "

But even if counsel were correct that I first have to exhaust all my administrative remedies, I have. I have fought this before in state court. And won. Then I petitioned the defendant Justices. And lost. I have done everything a good citizen is expected to do.

Opposing counsel suggests in Doc. 18, at 6:7 that I could take my case to the "Arizona state appellate court." Technically, that is not correct. Because my injunction has been kicked down to justice court, the highest I could appeal this matter is the Superior Court. Whichever, neither court has the authority to overrule the State Supreme Court's unlawful Rule. They cannot provide prospective relief.

And even if I could get before the Arizona Supreme Court, why would the Justices invalidate their Rule 6(E)(4)(e)(2) now if they haven't done so in a petition from two years ago? Thus, declaratory relief is patently unavailable. Therefore, per FCIA, even if the defendants are acting in their official capacity, since declaratory relief is unavailable, I am entitled to injunctive relief. This case should not be summarily dismissed.

VIII. SB 1070 precedent and equal justice precludes dismissal.

In the abstract, this case is much like Arizona's SB 1070 (*United States v. Arizona*). In SB 1070, the defendant was a branch of Arizona government, the Executive—the Governor by name—sued in her official capacity for making an unconstitutional law. In this instant matter, a different branch of government, the Judicial —the Justices of the Arizona Supreme Court by name—is likewise being sued in their official capacity for making unconstitutional law. Both the Arizona District Court and this court have enjoined state defendants in SB 1070 from enforcing certain elements of their unconstitutional law. Blind justice dictates the outcome here should be the same, independent of who the defendants are. Immunity cannot be a defense for making unconstitutional law. Summary dismissal would violate equal justice under law.

IX. To summarily dismiss would make this a classic case of "Capable of Repetition, yet evading review."

11

Given that mootness and dismissal, in the end, are essentially the same, there is an "established exception to mootness [dismissal] for disputes capable of repetition, yet evading review." *FEC v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652, 2662 (2007). "The exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"

Taking the exceptions in reverse order, I, the complaining party, have already had to fight this battle for our constitutional rights before. This is a live controversy. If this matter is not resolved by the federal court, it is likely I, and other Arizonans (like Michael Roth) will be subject to the same constitutional deprivation again and again. If this court summarily dismisses this suit (so that this action cannot be fully litigated), this deprivation will be capable of repetition, but evade review. Therefore, summary dismissal is not an option.

## X. § 1983 action precludes summary dismissal.

"The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law . . . " *Mitchum v. Foster*, 407 U.S. 225, 226 (1972). This is a § 1983 action. The federal court must interpose itself between these state actors and the people. Summary dismissal would preclude the court from doing its duty to protect the people from an unconstitutional action under color of state "law."

## XI. First Amendment precludes summary dismissal.

In light of the above argument, if this court summarily dismisses this action for judicial immunity, then it has foreclosed the First Amendment right of the people to petition their government for a redress of grievances. For the federal court is the only court that can enjoin the state justices, the only court that can provide redress. Lack of redress is one of the complaints in the *Declaration of Independence*. For the sake of orderly society, summary judgment is not an option.

## XII. Dismissal is not appropriate per International law.

While I have shown that judicial immunity does not apply in this unique matter, even if it did, perhaps this court should celebrate diversity by looking to

12

Spain for guidance? (Given that some Justices of the SCOTUS have turned to International law for guidance.) This plaintiff has observed that almost every appellate ruling on immunity for judges rehearses English common-law, going back to Lord Coke and/or quoting Learned Hand as precedent for why judges should be immune from their decisions at bar. However, in Spain there is the ongoing case of Spanish judge Baltasar Garzón who is being prosecuted in Spanish Court for abuse of powers. (See Attachment B.)

In this instant matter, I am not calling for the suspension of the judge defendants as Spain is of judge Garzón. I'm merely asking for declaratory and injunctive relief from an unconstitutional "law." Yet, defendants are asking to be immune from their action, asking to be above the law.

Spain is applying our motto "Equal Justice under Law." Shouldn't the United States also?

Thank you for your time,

*P. "Mike" Palmer*

P. "Mike" Palmer

cc: Pamela J. Linnins
1275 W. Washington
Phoenix, AZ 85007-2997

13

# ATTACHMENT A

# RULES OF THE ARIZONA SUPREME COURT

## Rule 28. Procedure for Adoption, Amendment or Repeal of Rules

### Preamble

It is the policy of the Arizona Supreme Court to establish an effective process for the adoption, amendment, and repeal of <u>rules of procedure for the courts of this state</u> which will provide for public notice and opportunity for comment from the members of the legal profession and the public on proposals to adopt, amend, or repeal rules, utilizing available technology. To carry out this policy, the court has established appropriate procedures, an interactive court rules website, and an annual rule-making cycle to implement its constitutional authority under Article 6, Section 5 of the Arizona Constitution, as hereinafter set forth.

**(A) Petition for Adoption, Amendment, or Repeal of Rule; Deadline for Filing.**

(1) *Deadline for and Method of Filing.* Any person, association or public agency interested in the adoption, amendment, or repeal of a court rule may file a petition to adopt, amend, or repeal a rule. Such petition shall be filed on or before January 10 in any given year in order to be considered and acted upon by the court at its annual rules conference the following September.

    (a) *Paper Filing.* A written paper petition shall be filed with the Clerk of the Supreme Court and shall consist of an original and six (6) copies, in addition to one copy of the petition and supporting documentation in Microsoft Word format on a CD, disk, or other compatible electronic medium.

    (b) *Electronic Filing.* A petition may be filed electronically by registering at the Court Rules Forum website, accessible at *http://www.supreme.state.az.us*, and submitting the petition as attachments in both PDF and Microsoft Word format. The PDF version of the electronically filed petition shall be considered the official record. The electronic petition shall comply with the length and formatting requirements of Rule 28(A)(2), and with the requirements of Rule 124, Rules of the Supreme Court. An electronically filed petition constitutes the filing of the original written and signed paper under the rules governing practice and procedure in the courts of this state. Any person filing a petition electronically shall be deemed to have consented to receive electronic service from another party and also to have consented to receive minute entries, orders, and notices from the court electronically.

(2) *Form and Contents of Petition.* The petition shall state the grounds for the adoption, amendment or repeal of the rule, include a draft of the proposed new or amended rule, and may be accompanied by supporting documentation. The petition and supporting documentation shall not exceed 20 pages, exclusive of pages containing a draft of the proposed new or amended rule. The form, method of preparation, and filing of the petition and supporting documentation shall substantially conform, insofar as practicable, to the requirements of Rule 6(c), ARCAP.

(3) *Court Review of Petition.* After the filing of a petition, the court shall review the petition and any supporting documentation and determine whether to open the matter for public comment in the manner provided in Rule 28(c), refer it to an appropriate committee for further study and report, or reject it for lack of need, merit, or substance.

# ATTACHMENT B

**The New York Times** Reprints

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.



January 24, 2012

# Renowned Spanish Judge Goes on Trial, Accused of Abusing Power

By RAPHAEL MINDER

MADRID — Baltasar Garzón, a high-profile Spanish judge who garnered international renown by pursuing political leaders, including Gen. Augusto Pinochet of Chile, was himself on trial on Tuesday over accusations that he had abused his powers to investigate atrocities committed during the Spanish Civil War.

The case is one of three trials focusing on Judge Garzón, who had spearheaded Spain's fight against political corruption and against terrorism by ETA, the Basque separatist group.

Last week, a separate trial began over whether Judge Garzón had ordered illegal eavesdropping as part of a corruption investigation. The case that opened on Tuesday follows Judge Garzón's indictment by a fellow judge in early 2010 on charges that he overreached his authority in pursuit of civil war abuses.

The case, which on Tuesday focused on procedural issues, has drawn international resonance and criticism. Amnesty International has called the proceeding against the judge "a threat to human rights and judicial independence."

Judge Garzón is expected to be questioned on Jan. 31, with the Supreme Court likely to rule two weeks later. He has denied any wrongdoing.

Amnesty International and Human Rights Watch are among the organizations that have appointed representatives to monitor the civil war trial.

If found guilty, Judge Garzón, 56, could be suspended for as long as 20 years, a punishment that could effectively end his career. Judge Garzón is also entangled in a third trial, over personal financing he is suspected of receiving from Santander, a leading Spanish bank.

The case on Jan. 31 dates from October 2008, when Judge Garzón started a politically sensitive investigation into tens of thousands of deaths and disappearances during the civil war and the ensuing dictatorship of Francisco Franco. Dispute about the judge's jurisdiction forced him to abandon the civil war investigation within a month and transfer to local authorities the

1

Case: 11-18040    02/03/2012    ID: 8057420    DktEntry: 18    Page: 18 of 18

task of exhuming unidentified bodies from mass graves.

By tackling the sensitive issue of how modern Spain should come to terms with its past, Judge Garzón cemented his reputation as an ambitious jurist and as one of Spain's most contentious personalities.

Judge Garzón had already established his reputation as an international defender of human rights by making extensive use of Spain's doctrine of universal jurisdiction, which permits prosecution within Spain of crimes committed outside the country.

Citing the killing of Spaniards during the dictatorship of General Pinochet in Chile, Judge Garzón sought General Pinochet's extradition to Spain from Britain in October 1998.

The judge's demand was eventually rejected by the British government on the grounds of General Pinochet's poor health, allowing General Pinochet to return instead to Chile.

Subsequently, Judge Garzón tried to investigate the business dealings of Silvio Berlusconi, the media tycoon who was at the time the prime minister of Italy, unsuccessfully trying to lift his political immunity in order to establish whether Mr. Berlusconi's television deals had breached Spanish antitrust laws.

Legal action against Judge Garzón relating to the civil war was started in 2009 by associations led by a fringe far-right political group, Manos Limpias (Clean Hands), on the grounds that the judge had knowingly exceeded his legal authority, in particular by contravening a 1977 general amnesty that covers crimes perpetrated during the Spanish Civil War.

On Tuesday, Judge Garzón's lawyer, Gonzalo Martínez Fresneda, urged the Supreme Court to drop the case, claiming Judge Luciano Varela, who had indicted Judge Garzón, had helped Manos Limpias file its suit.